UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:21-CV-00165-HBB

**BOBBIE JEAN G.**[1]                                                                                                    **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**                                              **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Bobbie Jean G. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 11) and Defendant (DN 13) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 7). By Order entered February 24, 2022 (DN 8), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

### FINDINGS OF FACT

On May 13, 2019, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 24, 193-94). Plaintiff alleged that she became disabled on January 1, 2018, as a

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

result of fibromyalgia, depression, high blood pressure, chronic bronchitis, chronic obstructive pulmonary disease ("COPD"), allergies, arthritis, sciatic nerve damage, borderline lupus, high cholesterol, sleeping problems, migraines, and plantar fasciitis (Tr. 24, 72-73, 89). The application was denied initially on November 25, 2019, and upon reconsideration on January 30, 2020 (Tr. 24, 86, 102). On March 13, 2020, Plaintiff filed a written request for hearing (Tr. 24, 133-37).

On October 29, 2020, Administrative Law Judge John R. Price ("ALJ") conducted a telephonic hearing due to the extraordinary circumstances presented by the COVID-19 Pandemic (Tr. 24, 42). Plaintiff and her counsel, Mary G. Burchett-Bower, participated in the telephonic hearing (Id.). Plaintiff and William R. Harpool, an impartial vocational expert, testified during the telephonic hearing (Id.).

In a decision dated December 1, 2020, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 24-33). The ALJ began by finding that Plaintiff's insured status expired on September 30, 2020 (Tr. 26). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 1, 2018, the alleged onset date (Id.). At the second step, the ALJ determined that Plaintiff, through September 30, 2020, had the following severe impairments: fibromyalgia, osteoarthritis, obesity, bronchitis, and COPD (Id.). The ALJ also determined that Plaintiff's acute cervical sprain, degenerative disc disease of the cervical spine, and osteopenia are "non-severe" impairments within the meaning of the regulations (Tr. 26-27). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 27).

At step four, the ALJ found that through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations: lift/carry twenty pounds occasionally and ten pounds frequently; an option to sit/stand at thirty minute intervals taking a minute or two to change position; avoid climbing of ladders, ropes, and scaffolding; avoid hazards such as unprotected heights and dangerous moving machinery; avoid exposure to hot or cold temperature extremes, avoid humidity, avoid concentrated vibrations, avoid more than moderate level of noise, avoid concentrated dust, gas, fumes, and other pulmonary irritants; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling (Tr. 27). Additionally, the ALJ determined that through September 30, 2020, Plaintiff was unable to perform any of her past relevant work (Tr. 32).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 32-33). The ALJ found that through the date last insured, Plaintiff was capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff had not been under a "disability," as defined in the Social Security Act, from January 1, 2018, through September 30, 2020, her date last insured (Tr. 33).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision. The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Hum. Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Hum. Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton, 2 F.3d at 695-96.

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

> 5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

<u>Finding No. 5</u>

1. Arguments of the Parties

Plaintiff argues the physical limitations in ALJ's RFC determination are not supported by substantial evidence in the record because the ALJ failed to appropriately consider Dr. Christopher Murter's examination findings in assessing the persuasiveness of the physical limitations in the examining physician's opinion (DN 11 PageID # 825-27). Specifically, Plaintiff focuses on the ALJ's determination that the physical limitations expressed by Dr. Murter "were not generally persuasive, as . . . the clinical findings on examination were minimal and generally benign" (<u>Id.</u> quoting Tr. 31). Plaintiff points out that Dr. Murter's examination notes indicate Plaintiff exhibited a gait disturbance (slow with a limp favoring the left side), limitation in range of motion, positive straight leg raise, and that Plaintiff was tearful lying flat on the examination table and needed assistance going from lying to standing (<u>Id.</u> citing Tr. 707, 710). As these clinical findings cannot be fairly termed as "minimal" and "generally benign," Plaintiff contends the limitations identified by Dr. Murter are supported by his findings on examination and the ALJ's determination to the contrary is not supported by substantial evidence (<u>Id.</u>). Additionally, Plaintiff points out that the lifting limitations expressed by Dr. Murter would have limited her to sedentary work and, at step five, a finding of disability under Medical-Vocational Rule 201.14 (<u>Id.</u> at PageID # 826-27).

Defendant responds by pointing out other clinical findings in Dr. Murter's report which substantiate the ALJ's determination that the physical limitations expressed by Dr. Murter "were not generally persuasive, as . . . the clinical findings on examination were minimal and generally benign" (DN 13 PageID # 837-38) (quoting Pl. Br. 3)). Defendant asserts that these other clinical findings constitute substantial evidence to support the ALJ's findings (Id.). Additionally, Defendant points out that the ALJ is not required to discuss every piece of evidence in the record (Id. at PageID # 837) (citing Miller v. Saul, No. 1:19-cv-00111, 2020 WL 1963971, at * 4 (W.D. Ky. Apr. 23, 2020)). As the ALJ limited Plaintiff to a reduced range of light work and substantial evidence supports that determination, Defendant argues that Medical-Vocational Rule 201.14 did not apply and that Plaintiff's claim fails (Id. at PageID # 839-40).

2. Discussion

The new regulations for evaluating medical opinions and prior administrative medical findings are applicable to Plaintiff's case because she filed her application after March 27, 2017 (Tr. 24, 193-94). *See* 20 C.F.R. § 404.1520c. The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[2] in the record, even if it comes from a treating medical source. 20 C.F.R. § 404.1520c(a).[3] Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings

---

2 At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings." 20 C.F.R. § 404.1513a(a)(1). Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation. 20 C.F.R. § 404.1513a(b)(1).

3 The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 404.1527(c)(2).

by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. § 404.1520c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1)-(5).[4] Of these five factors, the two most important are supportability and consistency. 20 C.F.R. § 404.1520c(a) and (b)(2). Further, the regulation requires Administrative Law Judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 404.1520c(b)(2).[5]

On November 16, 2019, Dr. Murter conducted a consultative examination of Plaintiff on behalf of the State agency (Tr. 706). His report summarized Plaintiff's subjective complaints about arthritis in her left hip and fibromyalgia (Id.). Dr. Murter observed that Plaintiff's general appearance and posture were unremarkable; she was tearful while lying flat on the exam table and required assistance while getting off it; and, while no assistive ambulation device was present, Plaintiff's "gait was slow and with a limp favoring the left side" (Tr. 707). Dr. Murter performed a physical examination and rendered the following opinion:

> MEDICAL SOURCE STATEMENT: No limitation with speaking, listening, or reasoning. She doesn't have limitation with social interaction. No limitation with gross and fine hand and fingers movement. Can lift and carry up to 10 pounds short distances. She can sit for up to 1 hour, stand for 30 minutes, and walk about 30 minutes at a time. She was in tears laying flat on the examination table and required assistance going from laying to standing.

(Id.).

---

[4] In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 404.1520c(c)(3)(i)-(v).

[5] Notably, under the regulations Administrative Law Judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 404.1520c(b)(2).

The ALJ commented, "[t]hese conclusions were not generally persuasive, as the undersigned notes the clinical findings on examination were minimal and generally benign, and issues related to reasoning and social interaction are areas outside the scope of the examination performed and outside the scope of the examiner's area of expertise" (Tr. 31). Essentially, Plaintiff argues substantial evidence does not support the ALJ's persuasiveness assessment of Dr Murter's physical limitations.

While the ALJ's explanation—how he considered the supportability and consistency factors in determining the persuasiveness of Dr. Murter's physical limitations—is brief, it indicates that the ALJ found the physical limitations overly restrictive considering the doctor's findings upon examination. Thus, the ALJ determined the physical limitations were not supported by or consistent with the minimal and generally benign reported findings in Dr. Murter's own report. Plaintiff contends that substantial evidence does not support the ALJ's persuasiveness assessment because the ALJ failed to adequately consider Dr. Murter's positive findings on examination such as gait disturbance, limitation in range of motion, positive straight leg raise testing, Plaintiff tearfully lying on the examination table, and Plaintiff needing assistance moving from lying to standing. But review of Dr. Murter's findings on examination suggests that Plaintiff relies on a handful of Dr. Murter's findings that are the exception not the rule.

Dr. Murter's physical examination revealed 5/5 bilateral grip strength; 5/5 bilateral upper and lower extremity strength; normal posture; no evidence of swelling, erythema, atrophy, anatomic deformity, spasm, or tenderness; and no evidence of active rheumatoid arthritis (Tr. 707, 710). Further, Dr. Murter's examination revealed that Plaintiff had normal range of motion values

9

(flexion-extension) in her shoulders, elbows, wrists, fingers, thumbs, ankles, and knees (Tr. 709-10).  Thus, Dr. Murter's examination revealed no limitations in the above-mentioned joints.

Dr. Murter's examination of Plaintiff's hips revealed a forward flexion of 100 degrees on the right and 70 degrees on the left (0-100 degrees), a backward extension of 30 degrees bilaterally (0-30 degrees), an abduction of 40 degrees on the right and 20 degrees on the left (0-40 degrees), and an adduction of 20 degrees bilaterally (0-20 degrees) (Tr. 710).  Essentially, Dr. Murter's examination findings indicate Plaintiff had a normal range of motion in the right hip and a minimal limitation on her range of motion in the left hip.

Dr. Murter's examination of Plaintiff's cervical spine indicated her lateral flexion bilaterally was 30 degrees (0-45 degrees); her forward flexion was 50 degrees (0-60 degrees); her backward extension was 50 degrees (0-75 degrees); and her rotation was 50 degrees to the right and 20 degrees to the left (0-80 degrees) (Tr. 709).  Thus, Dr. Murter's examination findings concerning Plaintiff's cervical spine were minimal or benign.

Plaintiff's lumbar spine had a flexion-extension of 50 degrees (0-90 degrees); a normal lateral flexion bilaterally; straight leg raising – supine was 70 degrees on the right and 50 degrees on the left (0-90 degrees); and straight leg raising – siting was 70 degrees on the right and 50 degrees (0-90 degrees) (Tr. 710).  Dr. Murter's examination findings concerning Plaintiff's lumbar spine may have been slightly more than minimal or benign.  But, when all of Dr. Murter's examination findings are considered, substantial evidence supports the ALJ's determination that Dr. Murter's opinion is not generally persuasive because the doctor's own findings on examination are minimal and generally benign.

It warrants further mention that the non-examining State agency medical consultants, Drs. Kip Beard (initial) and Dr. Douglass Back (reconsideration), reviewed Dr. Murter's report. Dr. Beard found Dr. Murter's opinion "less persuasive and overly restrictive based on reported findings" (Tr. 80, 82-83). Dr. Back agreed and indicated that Dr. Murter's opinion "is an overestimate of the severity of the individual's restrictions/limitations" (Tr. 95-96, 99-100). Thus, in assessing the persuasiveness of Dr. Murter's opinion, both doctors determined the opinion was not supported by and consistent with the doctor's own findings on examination. As the ALJ found the conclusions of Drs. Beard and Back generally persuasive (Tr. 31), their opinions also provide substantial evidence to support the determination that Dr. Murter's physical limitations are not generally persuasive.

As mentioned above, Plaintiff also asserts that the lifting limitations expressed by Dr. Murter would have limited her to sedentary work and, at step five, resulted a finding of disability under Medical-Vocational Rule 201.14. For the reasons set forth above, substantial evidence supports the ALJ's determination that Plaintiff has the RFC to perform a range of light work. This means that Medical-Vocational Rule 202.14 applied to Plaintiff, and it directs a conclusion of "not disabled" at step five. However, Plaintiff's RFC included nonexertional limitations. Therefore, the ALJ appropriately recognized that he was limited to using the Medical-Vocational Rules as a framework for the decision-making process at step five and made a non-guideline determination based on the testimony of a vocational expert (Tr. 32). *See* 20 C.F.R. § 404.1566(e); Born v. Sec'y of Health & Hum. Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Varley v. Sec'y of Health & Hum. Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Hum. Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). Thus, there is no merit to

Plaintiff's claim that the ALJ should have found her disabled under Medical-Vocational Rule 201.14. For the above reasons, Plaintiff is not entitled to relief on his challenges to the ALJ's RFC determination in Finding No. 5.

## Finding No. 10

1. Arguments of the Parties

Plaintiff contends that the vocational expert's testimony—identifying jobs that Plaintiff could perform—does not provide substantial evidence to support Finding No. 10 because the ALJ's hypothetical question failed to include "occasional balancing," a restriction included in the RFC determination (DN 11 PageID # 827-28). Plaintiff asserts there is no evidence in the record demonstrating the jobs the vocational expert identified could be performed if the "occasional balancing" limitation had been included in the hypothetical question (Id.). As "occasional" is defined as up to one-third of the workday and "balancing" is defined as maintaining body equilibrium to prevent falling when walking or standing, Plaintiff suggests that there may be a significant erosion of the occupational base (Id.) (citing 20 C.F.R. § 404.1545; Social Security Ruling 96-9p ("SSR 96-9p"); Selected Characteristics of Occupations, Appendix C, p. C-3).

Defendant acknowledges that the ALJ's hypothetical question did not include a limitation for occasional balancing (DN 13 PageID # 839). Defendant asserts the omission was harmless error because according to the Dictionary of Occupational Tittles ("DOT"), none of the jobs identified by the vocational expert require balancing (Id.) (citing DOT 706.684-042, 1991 WL 679055; DOT 522.667-010, 1991 WL 674266, DOT 559.687-074, 1991 WL 683797). Defendant contends there is no reason to reverse the final decision of the Commissioner as the ALJ's failure to include the occasional balancing limitation in the hypothetical question would not affect the

outcome of the decision (Id.). (citing Young v. Saul, No. 1:20-CV-00059-GNS-HBB, 2021 WL 4295152, at *11 (W.D. Ky. Apr. 27, 2021)).

2. Discussion

At the fifth step, the Commissioner has the burden of demonstrating a significant number of jobs exist in the national economy that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 404.1566(a); Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). As the ALJ's RFC determination included nonexertional limitations, the ALJ appropriately limited his use of the Medical-Vocational Rules to a framework in the decision-making process and made a non-guideline determination based on the testimony of a vocational expert (Tr. 32). See 20 C.F.R. § 404.1566(e); Born v. Sec'y of Health & Hum. Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Varley v. Sec'y of Health & Hum. Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Hum. Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

The parties agree, and the undersigned finds, that the hypothetical question to the vocational expert did not include the limitation "occasional balancing" which is set forth in the ALJ's RFC determination (*compare* Tr. 59-60 *with* Finding No. 5 at Tr. 27). The question is whether this omission is harmless. While Plaintiff suggests the final decision must be reversed and remanded for further findings on the impact of this omission (DN 11 PageID # 828), Defendant cites the DOT definitions for each of the jobs which indicate balancing is not a factor (DN 13 PageID # 839). In response to the ALJ's hypothetical question, the vocational expert opined there

would be some light jobs that Plaintiff could perform where she could basically work off a stool or a high-back chair (Tr. 60). The vocational expert explained that examples of such jobs would be inspector, DOT No. 522.667-010; bench assembler, DOT No. 706.684-042; and hand packager, DOT No. 559.687-074 (Id.). Defendant has demonstrated that none of the jobs identified by the vocational expert require balancing. See DOT 706.684-042, 1991 WL 679055 ("Balancing: Not Present – Activity or condition does not exist"); DOT 522.667-010, 1991 WL 674266 ("Balancing: Not Present – Activity or condition does not exist"); DOT 559.687-074, 1991 WL 683797 ("Balancing: Not Present – Activity or condition does not exist"). Because the ALJ's error is harmless, there is no reason to reverse the final decision of the Commissioner and remand the case for further proceedings. See Young v. Saul, No. 1:20-CV-00059-GNS-HBB, 2021 WL 4295152, at *11 (W.D. Ky. April 27, 2021). Thus, Plaintiff's challenge to Finding No. 10 does not warrant the relief she seeks.

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. Id. After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law. Therefore, Plaintiff is not entitled to relief with regard to her challenge.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

December 14, 2022

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:	Counsel